UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                            )
AETNA, INC.,                                                )
                          Plaintiff,                        )
                                                            )
                                                            )   **No. 07 Civ. 5766 (GBD) (JCF)**
               v.                                           )
                                                            )
SEEGER WEISS LLP and CHRISTOPHER                            )
SEEGER, Trustees for the Qualified Settlement               )   ELECTRONICALLY FILED
Fund "A" for Certain Zyprexa Products Claims                )
and DOES 1, 2, 3, etc.,                                     )
                                                            )
                          Defendants.                       )
-----------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**


CHRISTOPHER A. SEEGER (CS-4880)
DIOGENES P. KEKATOS (DK-2162)
DONALD A. ECKLUND (DE-2347)
One William Street
**SEEGER WEISS LLP**
New York, NY  10004-2502
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799

*Defendants Pro Se and Attorneys for
Defendant Christopher A. Seeger*

## TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

Statement of Facts .......................................................................................................................2

Argument ....................................................................................................................................5

POINT I .......................................................................................................................................5

    The Court Should Transfer this Action to the Eastern District of New York ...............5

        A. The Interests of Judicial Efficiency and Economy Mandate a Transfer ............5

        B. Because Plaintiff's Claims Directly Implicate the Settlement Approved by the Eastern District of New York and over Which It Maintains Jurisdiction, That Court Should Hear Those Claims ........................................8

        C. Plaintiff's Selection of This Court as the Venue Is Entitled to Little, if Any, Weight ..............................................................................................................10

POINT II ....................................................................................................................................12

    The Court Should Extend the Date for Defendants' Answer Pending Resolution of the Venue Issue .........................................................................................................12

CONCLUSION ..........................................................................................................................13

## **Preliminary Statement**

Defendants Seeger Weiss LLP and Christopher A. Seeger (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 1404(a), to transfer the above-captioned action to the United States District Court for the Eastern District of New York.

Plaintiff's claims stem from the nationwide settlement of the multidistrict Zyprexa pharmaceutical products liability litigation that the Judicial Panel on Multidistrict Litigation ("JPML") had centralized in the Eastern District before the Honorable Jack B. Weinstein more than three years ago. Judge Weinstein has rendered countless rulings in connection with both the pretrial proceedings and the settlements therein. The complaint refers only vaguely and amorphously to the settlement in the Zyprexa litigation. E.g., Compl. ¶¶ 3, 15, 17, 23. Notwithstanding that the complaint seeks reimbursement on behalf of a class, it is conspicuously silent as to the locus of the Zyprexa multidistrict litigation, nowhere mentioning or even alluding to <u>what</u> court or <u>which</u> judge has entered or presided over that settlement.

As discussed below, the interests of judicial efficiency and economy strongly weigh in favor of the transfer of this newly-filed action to the court having familiarity with the facts and legal issues that arose in connection with the encompassing settlements that were concluded in the multidistrict Zyprexa litigation. This Court should not have to expend limited judicial resources in order to acquaint itself with an involved mass settlement affecting thousands of injured claimants and alleged lien-holders—one that was concluded with the assistance of special masters and which has already received substantial judicial attention—merely because Plaintiff and its counsel have chosen to avoid presenting their claims to Judge Weinstein.

## STATEMENT OF FACTS

In April 2004, the JPML ordered that litigation pertaining to the prescription brand-name drug Zyprexa, manufactured by Eli Lilly & Company ("Eli Lilly")—an anti-psychotic medication used to treat schizophrenia, and alleged to have caused pancreatic damage in many of its users, resulting in their developing diabetes—be centralized before Judge Weinstein in the Eastern District of New York. See In re Zyprexa Prods. Liab. Litig., 314 F. Supp. 2d 1380, 1382-83 (J.P.M.L. 2004). Judge Weinstein thereafter consolidated both the initially-transferred actions and numerous cases subsequently filed in the Eastern District of New York or transferred to him by the JPML; appointed a Plaintiffs' Steering Committee, which included Christopher A. Seeger, a founding member of the law firm of Seeger Weiss LLP, to organize and coordinate the prosecution of the consolidated litigation on behalf of the plaintiffs; and appointed Mr. Seeger Plaintiffs' Liaison Counsel. See In re Zyprexa Prods. Liab. Litig., MDL No. 1596, 2004 WL 3520245, at **1-3 (E.D.N.Y. June 17, 2004).

After extensive negotiations, which were led on the plaintiffs' side by Mr. Seeger and which were overseen in part by a court-appointed special discovery master and four special settlement masters, in June 2005, Eli Lilly entered into a $690 million settlement covering some 8,000 individual plaintiffs. The settlement resolved virtually all cases then pending in the multidistrict proceedings centralized before Judge Weinstein, along with some state cases and some claims that had not yet filed. Judge Weinstein approved the settlement in November 2005. See In re Zyprexa, 433 F. Supp. 2d 268, 270 (E.D.N.Y. 2006); In re Zyprexa Prods. Liab. Litig., No. 04-MD-1596 (JBW), 2005 WL 3117302 (E.D.N.Y. Nov. 22, 2005) (approving Final Settlement Protocol); Alex Berenson, Lilly to Pay $690 Million in Drug Suits, N.Y. Times, June 10, 2005, available at http://www.nytimes.com/2005/06/10/business/10lilly.html?ex=1276056000&en=1c85097fc25d4e7c

&ei=5088&partner=rssnyt&emc=rss; see also In re Zyprexa Prods. Liab. Litig., 238 F.R.D. 539, 540 (E.D.N.Y. 2006) (describing litigation as "involv[ing] over ten thousand claims being administered in state courts and the federal courts under the Multidistrict Litigation program," with "[m]ost . . . settled with the aid of four settlement masters, a special master to supervise discovery, and plaintiffs' committees of attorneys . . . that have collected millions of documents in discovery and made them available to attorneys in all state and federal cases").[1]

Following review of the claims by the Special Settlement Masters, by letter dated June 14, 2006, Plaintiffs Liaison Counsel (Mr. Seeger) sought a hearing to determine how much of the recoveries should be set aside to satisfy prospective Medicare and Medicaid liens. See In re Zyprexa Prods. Liab. Litig., No. 04-MD-01596 (JBW), 2006 WL 1662610, at *1 (E.D.N.Y. June 15, 2006). Upon receipt of Mr. Seeger's letter, Judge Weinstein scheduled a hearing concerning Medicare and Medicaid lien resolution. See id. On June 29, 2006, Judge Weinstein heard arguments and concerns relating to Medicare and Medicaid liens and recovery rights in connection with the settled claims. See id. He held an additional hearing on the subject on July 24, 2006, and shortly thereafter ordered the PSC to provide the state Attorneys General and the federal government with a list of all settling plaintiffs in order to facilitate the resolution of liens. In re Zyprexa Prods. Liab. Litig., No. 04-MD-01596 (JBW), 2006 WL 2095728, at *1 (E.D.N.Y. July 28, 2006). Judge Weinstein was

---

[1] Following an influx of thousands of new cases, in January 2007, another round of settlements totaling $500 million followed. See In re Zyprexa Prods. Liab. Litig., Nos. 04-MD-1596, 06-CV-1729 (JBW), 2007 WL 1678078, *2 (E.D.N.Y. June 11, 2007); In re Zyprexa, No. 04-MDL-1596 (JBW), 2007 WL 37736 (E.D.N.Y. Jan. 5, 2007); Alex Berenson, Eli Lilly Settles with 18,000 over Zyprexa, N.Y. Times, Jan. 5, 2007, available at http://query.nytimes.com/gst/fullpage.html?sec=health&res=9F00E5DB1430F936A35752C0A9619C8B63. In all, some 20,000 federal cases have been settled. In re Zyprexa Prods. Liab. Litig., 239 F.R.D. 316, 317 (E.D.N.Y. 2007).

actively involved in resolving those issues and facilitating reimbursements to Medicare and Medicaid agencies. See, e.g., In re Zyprexa Prods. Liab. Litig., No. 04-MD-01596 (JBW), 2006 WL 2424750, at *1 (E.D.N.Y. Aug. 15, 2006) (entering qualified protective order to allow exchange of protected health information in order to assist in lien resolution); In re Zyprexa Prods. Liab. Litig., MDL No. 1596 (JBW), 2006 WL 2385230, at *1 (E.D.N.Y. Aug. 15, 2006) (noting that court had offered its assistance and that of Special Settlement Masters to PSC, federal government, and various states to facilitate resolution of liens); In re Zyprexa Prods. Liab. Litig., No. 04-MD-01596 (JBW), 2006 WL 2385232 (E.D.N.Y. Aug. 16, 2006) (enumerating concerns pertaining to resolution of Medicaid liens and setting August 21, 2006 hearing to address concerns).

On August 24, 2006, after months of negotiations and several hearings with all interested parties, Judge Weinstein entered an order regarding disbursement of funds to the plaintiffs, their counsel, and the state and federal lien-holders. In re Zyprexa Prods. Liab. Litig., No. 04-MD-01596 (JBW), 2006 WL 2443249, at *1 (E.D.N.Y. Aug. 24, 2006). Finally, on December 4, 2006, Judge Weinstein reported that "all fifty states as well as the federal government ha[d] resolved their Medicare and Medicaid liens," and that "[p]ayments to plaintiffs from all states [we]re being made." In re Zyprexa Prods. Liab. Litig., No. 04-MD-1596 (JBW), 2006 WL 3501263, at *1 (E.D.N.Y. Dec. 4, 2006).

On June 18, 2007, Plaintiff filed the instant class action complaint on behalf of itself and similarly-situated insurers. Plaintiff seeks reimbursement for medical benefits that it allegedly paid on behalf of participating plaintiffs in the multidistrict Zyprexa litigation as a "consequence[] of Zyprexa-related medical conditions." Compl. ¶¶ 2, 25-26. The gist of the complaint is that because those participating plaintiffs suffer from mental or other impairments," a "significant number of

-4-

private payers' rights have been ignored" by those plaintiffs in connection with the settlement agreement. Id. ¶ 24. Plaintiff seeks the imposition of a constructive trust on the Zyprexa settlement fund in order to satisfy its liens. Id. ¶ 42.

In essence, Plaintiff claims that it was incumbent upon Mr. Seeger and his firm to protect Plaintiff's interests and ensure that its liens be satisfied "off-the-top" from the settlement proceeds paid by Eli Lilly, rather than, as is ordinarily the case with private liens in tort cases, Plaintiff having to look to and deal directly with the individuals who received proceeds out of the Zyprexa settlement.[2] Whatever the merit to Plaintiff's theory (or lack thereof), for the reasons discussed below, it is properly addressed to Judge Weinstein, who presided over and approved the Zyprexa settlement, dealt with sundry related lien issues, and is best positioned to address Plaintiff's claims.

## ARGUMENT

### Point I

### THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF NEW YORK

**A. The Interests of Judicial Efficiency and Economy Mandate a Transfer**

A motion to transfer venue under 28 U.S.C. § 1404(a) involves a two-part inquiry. The Court

---

[2] Tellingly, save a lone citation to a purely jurisdictional provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), see ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ("[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief"), the complaint cites no authority to support Plaintiff's assumption that Mr. Seeger and his firm were obligated to satisfy Plaintiff's liens out of a general settlement pool so as to relieve it of the obligation to look to its insureds for reimbursement.

must first consider "whether the action to be transferred 'might have been brought' in the transferee court"; and, if so, whether, under the relevant criteria, a transfer is appropriate. Fuji Photo Film Co. v. Lexar Media, Inc. 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (quoting Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y.1998) (internal citations omitted)).

Here, Plaintiff could have brought this action in the Eastern District of New York because "a substantial part of the events or omissions giving rise to the claim occurred" there—inasmuch as Plaintiff's claim arises directly out of the nationwide settlement brokered and approved by that court—and Defendants are subject to personal jurisdiction there. 28 U.S.C. § 1391(c).

As to the second prong of the Section 1404(a) inquiry, legions of cases recognize that the pendency of related litigation in another district is a strong factor weighing in favor of a transfer of venue. E.g., Berman, 30 F. Supp. 2d at 660 & n.2 ("[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district.") (citing cases); Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 349 (S.D.N.Y. 1988) (noting "strong policy favoring the litigation of related claims in the same tribunal," and transferring action to Northern District of Texas, where related action was pending); Somerville v. Major Exploration, Inc., 576 F. Supp. 902, 908 (S.D.N.Y. 1983) ("The existence of a related action in the transferee district is a strong factor to be weighed in the interest of judicial economy.") (citing cases); Dow Jones & Co. v. Board of Trade of Chicago, 539 F. Supp. 190, 193 (S.D.N.Y. 1982) ("A previously filed federal lawsuit is given priority unless reasons exist to proceed with the latter action."); Rodgers v. Northwest Airlines, Inc., 202 F. Supp. 309, 312 (S.D.N.Y. 1962) (noting "'strong policy favoring the litigation of related claims in the same tribunal'") (citation omitted).

Indeed, considerations of judicial economy, which are encompassed by the interest of justice factor, are the <u>most important</u> of all of the factors that courts consider on a Section 1404(a) transfer motion. See <u>Regents of the Univ. of Cal. v. Eli Lilly and Co.</u>, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'"); <u>Amazon.com v. Cendant Corp.</u>, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) ("The interest of justice factor is the most important of all.") (citing cases); <u>Rabbi Jacob Joseph Sch. v. Province of Mendoza</u>, 342 F. Supp. 2d 124, 130-31 (E.D.N.Y. 2004) ("The judicial economy factor is a separate component of the court's Section 1404(a) transfer analysis and may be determinative in a particular case") (citing cases; internal quotation marks omitted); <u>Flowserve Corp. v. BMCE, Inc.</u>, No. 05 Civ. 8075 (WHP), 2006 WL 2927176, *4 (S.D.N.Y. Oct. 12, 2006) (judicial economy "may be determinative in a particular case") (citing cases; internal quotation marks omitted); <u>Williams v. City of New York</u>, No. 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative.") (citing cases); see also <u>Heller Fin., Inc. v. Midwhey Powder Co.</u>, 883 F.2d 1286, 1293 (7th Cir. 1989) ("The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case"). This is because "[o]ne of the goals of Section 1404(a) is to 'prevent the waste of "time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense."'" <u>MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.</u>, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004) (quoting <u>Van Dusen v. Barrack</u>, 376

U.S. 612, 616 (1964) (internal citation and quotation marks omitted)).

**B.  Because Plaintiff's Claims Directly Implicate the Settlement Approved by the Eastern District of New York and over Which It Maintains Jurisdiction, That Court Should Hear Those Claims**

In the case at bar, a transfer to the Eastern District is warranted given that Plaintiff's claims undeniably arise out of the nationwide settlements in the multidistrict Zyprexa litigation centralized there. Moreover, the claim that Plaintiff asserts directly implicates the court-approved settlements in that litigation. Judge Weinstein is best positioned to address Plaintiff's claims concerning its alleged liens, especially given that he has already resolved complex issues concerning Medicaid and Medicare liens held by federal and state governmental authorities across the nation. See supra at 3-5; In re Zyprexa Prods. Liab. Litig., 451 F. Supp. 2d 458 (E.D.N.Y. 2006) (addressing issues concerning outstanding Medicare and Medicaid liens on recoveries of plaintiffs who had entered into settlement of their claims), judgment entered, No. 04-MD-1596 (JBW), 2006 WL 2739721 (Sept. 25, 2006), opinion clarified, No. 04-MD-1596 (JBW), 2006 WL 2792767 (Sept. 28, 2006); see also Cooper-Jarrett, Inc. v. Central Transp., Inc., 726 F.2d 93, 96 (3d Cir. 1984) (where Chapter 11 setoff claim was intertwined with enforcement of settlement agreement, matter was "particularly suited for resolution by the district court in which the settlement agreement was negotiated); In re Zyprexa Prods. Liab. Litig., 2006 WL 3501263, at *1 ("In compliance with this court's instructions . . . all fifty states as well as the federal government have resolved their Medicare and Medicaid liens.").

Moreover, Judge Weinstein has retained jurisdiction over the Escrow Account that operates as the settlement fund and over its named Administrator, Seeger Weiss LLP. See In re Zyprexa Prods Liab. Litig., 2005 WL 2237771, at *2 (E.D.N.Y. Aug. 16, 2005) ("The Escrow Account and its named Administrator shall be subject to the continuing jurisdiction of this Court"). Because Plaintiff

challenges Seeger Weiss LLP's administration of the settlement fund, the Eastern District of New York would be the appropriate court to entertain Plaintiff's claims. See, e.g., Koehler v. Green, 358 F. Supp. 2d 346, 347 (S.D.N.Y. 2005) (transferring action to court that approved settlement and retained jurisdiction over case). Otherwise, "[i]f this court were to exercise jurisdiction over the claims in the Complaint it would subject the Settlement Agreement to possible inconsistent interpretations which would interfere with the District Court's rulings under the Settlement Agreement." In re McMahon Books, Inc., 173 B.R. 868, 875 (Bankr. D. Del. 1994).

Furthermore, as a general matter, this Court and others have repeatedly recognized the suitability of transferring litigation to districts more familiar with the underlying factual or legal issues, even where the other litigation is not identical. E.g., Savin v. CSX Corp., 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987) (interests of justice favored transfer given "extensive experience" judge in Western District of Pennsylvania, "who ha[d] almost ten years of involvement" with related litigation, despite differences exist between legal issues raised in transferred actions and Pittsburgh litigation; "Judge Weber's familiarity with the factual background . . . will no doubt prove of substantial assistance to both parties."); Channel Four Television Co. v. Wildmon, No. 92 Civ. 2555 (LMM), 1992 WL 395628, at *3 (S.D.N.Y. Dec. 16, 1992) (transferring action to court "better suited to adjudicate" claim); see also U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd, 357 F. Supp. 2d 924, 937-39 (E.D. Va. 2005) (granting transfer where case was "not identical," but was intimately related to cases pending in transferee district, and more important consideration was judicial economy in having same judge, who was already familiar with underlying facts and issues, consider case and thereby avoid duplicative litigation and inconsistent results); Temple v. Circuit City Stores, Inc., Nos. 2:05-CV-165, 2:05-CV-211, 2006 WL 2796483, at **3-4 (E.D. Tenn. Sept. 27, 2006) (granting

transfer where case directly flowed from settlement in earlier litigation in Eastern District of New York, where Judge Gleeson was intimately familiar with underlying facts and law); All-Tone Commc'ns, Inc. v. US West, Inc., No. 90 C 4841, 1990 WL 206150, at *3 (N.D. Ill. Nov. 21, 1990) (transferring action that directly grew out of, and sought to enforce, settlement agreement entered in transferee district, and where judge in transferee district had three year history with litigation and had became quite familiar with facts underlying controversy).

In addition, the Second Circuit has articulated a policy against the fragmentation of related litigation, noting that "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplic[ative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968); id. at 619-20 (upholding transfer where judge in transferee district had been designated to supervise litigation there in related cases, and "[h]is familiarity with the legal problems, attorneys, witnesses, and exhibits relating to the affairs of Westec constitutes a precious asset, increasing in value with the passage of time, and which will undoubtedly lighten the burden of litigants and courts alike. It would be a disservice to the overburdened multijudge court in the Southern District of New York, as well as to the litigants, to permit the litigation to remain here in the light of [his] designation.").

C. **Plaintiff's Selection of This Court as the Venue Is Entitled to Little, if Any, Weight**

Although Plaintiff chose to file this action in this District, that fact is entitled to little, if any, weight because it has filed this case as a putative nationwide class action. E.g., In re Warrick, 70 F.3d 736, 741 n.7 (2d Cir.1995) (a "plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action"); Glass v. S & M NuTec, LLC, 456 F.

Supp. 2d 498, 504 (S.D.N.Y. 2006) ("little weight" accorded to plaintiff's choice of forum "in a putative class action involving plaintiffs who are scattered throughout the country"); Eichenholtz v. Brennan, 677 F. Supp. 198, 201 (S.D.N.Y. 1988) ("In a class action, the named plaintiff's choice of forum is afforded little weight"); Grace v. Bank Leumi Trust Co. of New York, No. 02 Civ. 6612 (RMB), 2004 WL 639468, at *4 (S.D.N.Y. Mar. 31, 2004) ("'in class actions little weight is given to the plaintiffs' choice'") (quoting Butcher v. Gerber Pros. Co., No. 98 Civ. 1819 (RWS), 1998 WL 437150, at *10 (S.D.N.Y. Aug. 3, 1998) (in turn citing cases)); see also Koster v. Lumberman's Mut. Co., 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (footnote omitted).

Additional reasons why Plaintiff's selection of this District as the forum is entitled to little weight are that Plaintiff is a Pennsylvania corporation with its principal place of business in Connecticut, see Compl. ¶ 5, and thus does not reside in this District, and Plaintiff's cause of action did not arise here. See Harris v. Brody, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007) (plaintiff's choice of forum not accorded importance "when the operative facts have few meaningful connections to the plaintiff's chosen forum"); Eichenholtz, 677 F. Supp. at 201 ("The plaintiff's choice of forum is given less weight where, as here, the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum.") (citing cases); In re Geopharma, Inc., No. 04 Civ. 9463 (SAS), 2005 WL 1123883, at *1 & n.6 (S.D.N.Y. May 11, 2005) ("when the plaintiff is a nonresident and the operative facts bear little connection to the chosen forum, plaintiff's choice is shown less deference") (citing cases); Intria Corp. v. Intira Corp., No. 00 Civ. 7198 (AGS), 2000 WL

1745043, at *8 (S.D.N.Y. Nov. 27, 2000) ("[W]here the forum is not the plaintiff's home district, the plaintiff's choice of forum is given less deference, even when the plaintiff's home district is adjacent to the forum.") (citing cases); id. ("[P]laintiff's choice of forum is entitled to little weight where, as here, the forum has no material connection with the action.").

Finally, a transfer of the litigation to the Eastern District of New York would not inconvenience, let alone materially prejudice, Plaintiff given the proximity of that district to both the Connecticut-based Plaintiff and Plaintiff's Westchester-based counsel.

* * * *

In sum, the Court should transfer this action to the Eastern District of New York so that it may be heard by Judge Weinstein.[3]

### Point II

### THE COURT SHOULD EXTEND THE DUE DATE FOR DEFENDANTS' ANSWER PENDING RESOLUTION OF THE VENUE ISSUE

Defendants were served with the complaint on June 18, 2007. Consequently, pursuant to Rules 6(a) and 12(a)(1)(A) of the Federal Rules of Civil Procedure, Defendants' answer to the complaint is due on July 9, 2007.[4] In light of this motion for transfer to a more appropriate forum, Defendants respectfully request that, pursuant to Rule 6(b), the Court extend the time for Defendants to answer or move with respect to the complaint until twenty days after the date of entry of an Order

---

[3] Defendants also intend to file a parallel motion with the JPML, pursuant to 28 U.S.C. § 1407, to request that it transfer this action to Judge Weinstein.

[4] Under Rule 12(a)(1)(A), Defendants' answer is due twenty days after service. Because the twentieth day after service here falls on Sunday, July 8, 2007, Rule 6(a) extends the due date for their answer to Monday, July 9th.

disposing of the instant motion.

## CONCLUSION

For the foregoing reasons, the Court should (i) transfer this action to the Eastern District of New York and (ii) extend the due date for Defendants' answer until twenty days after the date of entry of an Order disposing of the instant motion.

Dated: New York, New York

      July 9, 2007

Respectfully submitted,

SEEGER WEISS LLP

By: /s/ Christopher A. Seeger
CHRISTOPHER A. SEEGER (CS-4880)
DIOGENES P. KEKATOS (DK-2162)
DONALD A. ECKLUND (DE-2347)
One William Street
New York, NY 10004-2502
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
*Defendants Pro Se and Attorneys for Defendant Christopher A. Seeger*